**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SHANICE SMITH,<br>*Plaintiff*,<br>v.<br>DISTRICT OF COLUMBIA, *et al.*,<br>*Defendants*. | Civil Action No. 25 - 3020 (LLA) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Shanice Smith brings this action against the District of Columbia and Shelly Gray, the Principal of LaSalle-Backus Elementary School ("LaSalle"), alleging discrimination, retaliation, and hostile work environment claims on the basis of her disability, as well as violations of the D.C. Accrued Sick and Safe Leave Act ("D.C. Sick Leave Act"), D.C. Code § 32-531 *et seq*. ECF No. 4.[1] Defendants have moved to dismiss all but the claim under the D.C. Sick Leave Act for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). ECF No. 11. For the reasons explained below, the court grants in part and denies in part Defendants' motion to dismiss.

[1] The court cites the corrected version of Ms. Smith's amended complaint. *See* Errata, ECF No. 4. The parties also refer to the school as "La-Salle Backus," but the school's correct name appears to be "LaSalle-Backus." *See LaSalle-Backus Elementary School*, D.C. Pub. Schs., https://perma.cc/FB59-ET3Y. The court accordingly takes judicial notice of the school's website. *See, e.g.*, *Cannon v. District of Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013) (taking judicial notice of a document posted on the District of Columbia's Retirement Board website).

## I. FACTUAL BACKGROUND

The following factual allegations drawn from Ms. Smith's amended complaint, ECF No. 4, are accepted as true for the purpose of evaluating the motion to dismiss, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Ms. Smith has been a teacher in the District of Columbia since 2011. ECF No. 4 ¶ 16. She suffers from adenomyosis, polycystic ovary syndrome, and endometriosis, which "seriously affect . . . her hormones, ovaries, uterus, and fertility" and often cause significant pain. *Id.* ¶ 18.

### A. Ms. Smith Joins LaSalle

In August 2022, Ms. Smith began working at LaSalle, part of the D.C. Public Schools ("DCPS"), as an English Language Arts Instructional Coach. ECF No. 4 ¶ 22. Ms. Smith was also part of LaSalle's "Leadership Team" and fell under the supervision of Ms. Gray, LaSalle's Principal. *Id.* ¶¶ 9, 22. As part of her role, Ms. Smith facilitated professional development programming for DCPS teachers called "Learning Together to Advance our Practice" ("LEAP") seminars. *Id.* ¶ 23.

In September 2024, Ms. Smith attended a meeting with Ms. Gray's immediate supervisor, Instructional Superintendent Katherine Larkin, and two other members of the Leadership Team. *Id.* ¶ 24. During the meeting, Ms. Gray "interjected" three times when a question was posed to Ms. Smith. *Id.* ¶ 25. "Ms. Gray had an elevated tone, her face became dark red, and spit foamed at her mouth while she interjected Ms. Smith." *Id.* Around this time, Ms. Gray also started making comments to Ms. Smith such as "[l]eadership goes beyond bell to bell," "[p]eople have to put the work in," and "[p]eople cannot get by doing the bare minimum." *Id.* ¶¶ 26, 30 (internal quotation marks omitted). These comments "signaled to [Ms. Smith] that [Ms.] Gray wanted her to work significantly beyond her tour of duty and was upset that she could no longer do so." *Id.* ¶ 26.

The following month, an interim Instructional Superintendent replaced Ms. Larkin, and Ms. Gray "made her prior ten[-]year personal relationship" with the interim supervisor "explicit to Ms. Smith in an act of willful intimidation." *Id.* ¶ 27. Ms. Gray also added various "check-ins" and "deliverables" to Ms. Smith's daily schedules "at or around the same time [Ms. Smith] was scheduled to be on duty and throughout the school day." *Id.* ¶ 28. Ms. Gray held weekly "counseling meetings or 'check ins' . . . to just berate her, in addition to having [her] submit her weekly agendas for her LEAP meetings." *Id.* ¶ 31. Ms. Gray did not require April Barnes, a Math Instructional Coach at LaSalle, to submit weekly agendas or participate in weekly meetings. *Id.* Ms. Gray would also regularly walk by Ms. Smith's office to "see if she was working or not, and if not, write her up to create a 'paper trail.'" *Id.* ¶ 28. Ms. Gray would yell at Ms. Smith when she successfully completed a task and send her emails about "making [her] work visible." *Id.* ¶ 29. Ms. Gray forced Ms. Smith to complete her work in shared documents "in order to heavily monitor [her]." *Id.* And Ms. Gray would "provide unjustified feedback" while Ms. Smith was working from home and would track how much time she spent on a document. *Id.*

### B. Ms. Smith Takes Leave and Subsequently Receives a Poor Evaluation

Ms. Smith took two sick days in October 2024 because of a "serious illness related to her disabilities" that prevented her from teaching. ECF No. 4 ¶ 33. On her first sick day, Ms. Gray called and emailed her. *Id.* ¶ 34. Ms. Gray kept Ms. Smith on the phone "for an extended period of time, questioning her about her work, yelling at her, abusing her, and preventing her from attending to her medical needs." *Id.* ¶ 35. On the second day, Ms. Gray called again and "interrogat[ed]" Ms. Smith about work matters. *Id.* ¶ 36. That same day, Ms. Gray removed Ms. Smith's duties as a LEAP facilitator. *Id.* ¶ 37. The following month, Ms. Gray "restored" Ms. Smith's LEAP facilitation duties. *Id.* ¶ 40.

In December 2024, Ms. Smith was again seriously ill due to her disabilities and could not take medication because it would cause her to become drowsy on her commute to work. *Id.* ¶ 41. But out of fear of Ms. Gray's "anger and retaliation" based on her previous experiences, Ms. Smith nevertheless attempted to lead a LEAP seminar while sick on December 5. *Id.* ¶ 42. Ms. Smith "became violently ill" and vomited in front of the seminar attendees before falling unconscious. *Id.*

In December 2024 and into January 2025, Ms. Gray increased Ms. Smith's workload "beyond what [Ms. Smith] could reasonably accomplish[,] with full awareness that this would" exacerbate [her] disabilities. *Id.* ¶ 43. During this time, Ms. Smith typically worked two hours of overtime each day, but this was still not enough for her to complete her assigned work. *Id.* ¶¶ 48, 52. For example, Ms. Smith was required to give feedback to teachers, even though that responsibility was "reserved for principals and assistant principals." *Id.* ¶ 50. Ms. Barnes was "not similarly tasked with additional work and duties that were extremely difficult to complete in a given school day." *Id.* ¶ 49. Ms. Smith was also required to submit "at least some of her work" to Ms. Barnes for review, while Ms. Barnes was not required to submit her work to Ms. Smith. *Id.* ¶ 51. Ms. Smith requested that she be taken off morning arrival duty indefinitely because it interfered with her lesson-planning time and because most teachers were not required to be on duty. *Id.* ¶¶ 44-46. But Ms. Gray "exhibited extreme contempt toward her and her request." *Id.* ¶ 44. Ms. Barnes was not consistently required to serve on morning arrival duty, and when she was, she "spent the majority of the time" watching and supervising Ms. Smith instead of performing the required tasks. *Id.* ¶ 47.

In mid-January 2025, Ms. Gray gave Ms. Smith a rating of "non-effective" on her performance evaluation, even though Ms. Smith had previously been given a rating of "highly

effective." *Id.* ¶ 53. Ms. Gray also relied on LaSalle's students' low standardized testing results to "negatively influence" Ms. Smith's evaluation. *Id.* ¶ 54. Standardized testing results affect the performance evaluation of a school principal like Ms. Gray, but not those of instructional coaches like Ms. Smith. *Id.* ¶ 55. Ms. Gray made a comment to Ms. Smith during the evaluation meeting to the effect of: "The shit starts at the top of the hill and rolls down. Everyone (me specifically) is going to feel it." *Id.* ¶ 54 (internal quotation marks omitted). Ms. Gray also told Ms. Smith: "As I have said to you many times before, this is not the place for you," which was a comment Ms. Gray had made "on at least three other occasions." *Id.* ¶ 56 (internal quotation marks omitted).

### C. Ms. Smith Files an EEO Complaint and Grievances and Continues Taking Leave

In January 2025, Ms. Smith filed an equal employment opportunity ("EEO") complaint with the Equal Employment Opportunity Commission ("EEOC") alleging harassment and retaliation. ECF No. 4 ¶ 57. At a meeting the next day, Ms. Gray told several colleagues: "I done wore [Ms. Smith] out with the main office." *Id.* ¶ 59 (internal quotation marks omitted). Over the next few months, Ms. Gray repeated phrases Ms. Smith had included in her complaint back to her. *Id.* ¶ 58.

In mid-February, Ms. Smith's doctor wrote a note explaining that Ms. Smith was ill and would need at least five to seven days to improve. *Id.* ¶ 62. Her doctor also noted that she should not be given work responsibilities and should be allowed to focus on recovery. *Id.* Ms. Smith accordingly took medical leave in late February because of the "severe emotional distress" caused by Ms. Gray's actions, *id.* ¶ 61, and Ms. Gray again "continued exhibiting displeasure" toward her via email and text messages from February to April, *id.* ¶ 60. On February 20, while Ms. Smith was on leave, Ms. Gray tried to call her. *Id.* ¶ 63. When Ms. Smith did not answer, Ms. Gray listed her as "Absent Without Leave – Failed to Show" ("AWOL"). *Id.* (internal quotation marks

omitted). After Ms. Smith returned from leave, Ms. Gray reduced her permitted overtime hours from two hours per day to one hour per day. *Id.* ¶ 64.

In late April, Ms. Smith sought an extension of her medical leave, but Ms. Gray "chastised" her for emailing the wrong employees about her request, even though Ms. Smith had followed the proper instructions. *Id.* ¶ 71. Ms. Smith then filed a grievance with DCPS's Labor Management and Employee Relations Office ("LMER") against Ms. Gray for violating federal employment laws, including by contacting and harassing her while she was on leave, removing essential duties, and making her "essentially have to report to Ms. Barnes as another supervisor." *Id.* ¶ 65; *see id.* ¶ 66 (explaining that the grievance was filed with LMER). Ms. Smith filed another grievance with LMER against Ms. Gray a few days later, in early May, this time for contacting her and sending work-related communications while she was on leave. *Id.* ¶ 67. LMER did not respond to either grievance. *Id.* ¶¶ 66, 68.

On May 12, Ms. Smith learned that her request for a leave extension had been granted. *Id.* ¶ 72. That same day, DCPS issued a letter to Ms. Smith—which she received on May 16—stating that her position as an Instructional Coach was being "'excessed,' or eliminated," as of June 20. *Id.* ¶ 73. In the letter, DCPS stated that Ms. Smith would be "subject to separation from the school system" unless she had received an "effective" or "highly effective" rating on her previous performance evaluation. *Id.* (internal quotation marks omitted) The letter caused Ms. Smith "severe emotional distress," as she believed she would soon be terminated from LaSalle, and she began searching for new employment while still on leave. *Id.* ¶ 74. In mid-June, LaSalle's Office of Employee Services advised Ms. Smith that her separation had been "rescinded" and that "she would be able to work at another school, which she did." *Id.* ¶ 76 (internal quotation marks omitted).

Meanwhile, upon Ms. Smith's return from leave on June 10, Ms. Gray altered her responsibilities "from supporting kindergarten through fifth grade teachers to supporting a pre-school self-contained special education teacher." *Id.* ¶ 75. On June 12, Ms. Smith submitted a third grievance with LMER based on mold in her office refrigerator and rat feces in her office. *Id.* ¶ 69. Ms. Smith also requested sick leave "after she was exposed to such conditions and while those items were being cleaned," but Ms. Gray "did not respond to her request and instead marked [her] as AWOL." *Id.* ¶ 70.

## II. PROCEDURAL HISTORY

On June 6, 2025, the EEOC issued a determination dismissing Ms. Smith's complaint without a finding on the merits and notifying Ms. Smith of her right to sue within ninety days. ECF No. 4 ¶ 13; *see* ECF No. 1, at 19-21.[2] Ms. Smith filed this action against the District of Columbia and Ms. Gray on September 4, 2025. ECF Nos. 1, 3, 4. In her corrected amended complaint, Ms. Smith raises five claims: (1) a disability discrimination claim against both Defendants under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, ECF No. 4 ¶¶ 79-99 (Count I); (2) a hostile work environment claim based on "disability harassment" against both Defendants under the ADA and the Rehabilitation Act, ECF No. 4 ¶¶ 100-111 (Count II); (3) a retaliation claim against both Defendants under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, the ADA, the Rehabilitation Act, and the D.C. Family and Medical Leave Act ("DCFMLA"), D.C. Code § 32-501 *et seq.*, ECF No. 4 ¶¶ 112-126 (Count III); (4) a retaliatory hostile work environment

---

[2] When referring to ECF No. 1, the court refers to the CM/ECF-generated page numbers at the top of each page rather than any internal pagination.

claim against both Defendants under Title VII, the ADA, the Rehabilitation Act, and the DCFMLA, ECF No. 4 ¶¶ 127-140 (Count IV); and (5) a retaliation claim against only the District of Columbia under the D.C. Sick Leave Act, ECF No. 4 ¶¶ 141-148 (Count V).[3] She seeks compensation for lost wages and benefits and at least $300,000 in compensatory damages. ECF No. 4 at 25.

In December 2025, Defendants moved to dismiss Counts I through IV under Federal Rule of Civil Procedure 12(b)(6). ECF No. 11. The motion is fully briefed. ECF Nos. 11, 12, 14.

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), the court will dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion under Rule 12(b)(6), a court accepts all well-pleaded factual allegations in the complaint as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009). Although the plausibility standard does not require "detailed factual allegations," it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*,

[3] Ms. Smith also purports to bring this action under the federal Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, *see* ECF No. 4 ¶ 2, but none of her five claims expressly invoke that statute, *see* ECF No. 4 ¶¶ 79-148. In any event, Ms. Smith brings retaliation and hostile work environment claims under the DCFMLA, and "[c]ourts interpret the FMLA and the DCFMLA similarly." *Cobbs v. Bluemercury, Inc.*, 746 F. Supp. 2d 137, 142 (D.D.C. 2010).

550 U.S. at 555. Nor will "'naked assertion[s]' devoid of 'further factual enhancement'" suffice. *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

In determining whether a complaint fails to state a claim, a court may consider only the facts alleged in the complaint and "any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020) (alteration in original) (quoting *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017)).

## IV. DISCUSSION

Defendants seek dismissal of Counts I through IV of Ms. Gray's amended complaint. ECF No. 11. First, Ms. Gray argues that she cannot be sued under Title VII, the ADA, or the Rehabilitation Act, and that these claims can only proceed against the District. *Id.* at 7-8. Second, Defendants argue that Ms. Smith fails to state a claim for disability discrimination (Count I), retaliation (Count III), or hostile work environment (Counts II and IV). *Id.* at 8-20. The court grants Defendants' motion to dismiss to the extent that it dismisses Ms. Smith's claims against Ms. Gray under Title VII, the ADA, and the Rehabilitation Act; dismisses Ms. Smith's hostile work environment claims in their entirety; and dismisses her retaliation claim in part. But the court denies the motion as it concerns Ms. Smith's discrimination claim and parts of her retaliation claim.

### A. Claims Against Ms. Gray Under Title VII, the ADA, and the Rehabilitation Act

Ms. Gray argues that the Title VII, ADA, and Rehabilitation Act claims against her must be dismissed because individual employees cannot be held personally liable under these statutes. ECF No. 11 at 7. The court agrees. Title VII, the ADA, and the Rehabilitation Act do not impose

liability on individual employees. *See Gary v. Long*, 59 F.3d 1391, 1399 (D.C. Cir. 1995) (holding that an "employee must be viewed as being sued in his capacity as the agent of the employer, who is alone liable for a violation of Title VII"); *Anderson v. Usher*, No. 12-7107, 2013 WL 1187399, at *1 (D.C. Cir. Mar. 4, 2013) (per curiam) ("[I]ndividual persons . . . are not liable under Title II of the ADA because that provision applies only to a 'public entity.'" (quoting 42 U.S.C. §§ 12132, 12131(1))); *McFadden v. Wash. Metro. Area Transit Auth.*, 949 F. Supp. 2d 214, 220 (D.D.C. 2013) (noting that "there is no individual liability under the ADA or the Rehabilitation Act" (quoting *Di Lella v. Univ. of D.C. David A. Clarke Sch. of L.*, 570 F. Supp. 2d 1, 8 n.8 (D.D.C. 2008))). And to the extent Ms. Smith raises claims under these statutes against Ms. Gray in her official capacity, those claims are "redundant" because "an official capacity suit against an individual is the functional equivalent of a suit against the employer"—here, the District of Columbia. *Cooke-Seals v. District of Columbia*, 973 F. Supp. 184, 187 (D.D.C. 1997).

Ms. Gray does not argue that she cannot be sued in her individual capacity for violations of the DCFLMA. *See* ECF No. 11, at 7-8. She has thus forfeited the issue. *See Margolin v. Nat'l Ass'n of Immigr. Judges*, 608 U.S. 339, 342 (2026) (per curiam) ("Because courts are 'essentially passive instruments of government,' [the parties must] 'frame the issues for decision.'" (quoting *United States v. Sineneng-Smith*, 590 U.S. 371, 375-76 (2020))); *cf. Hamiton v. Howard Univ.*, 960 A.2d 308, 317 n.12 (D.C. 2008) (declining to decide whether a supervisor "is subject to individual liability under the DCFLMA"). Accordingly, the court dismisses Ms. Gray from Counts I and II, and it dismisses her from Counts III and IV to the extent those claims arise under Title VII, the ADA, and the Rehabilitation Act, but not as they arise under the DCFMLA.

### B. Disability Discrimination Against the District (Count I)

To state a disability discrimination claim under the ADA or the Rehabilitation Act, a plaintiff must allege that (1) she had a disability within the meaning of the statute, (2) that she was qualified for the position with or without a reasonable accommodation, and (3) that she suffered an adverse employment action because of her disability. *Giles v. Transit Emps. Fed. Credit Union*, 794 F.3d 1, 5 (D.C. Cir. 2015); *see Lucas v. Am. Fed'n of Gov't Emps.*, 151 F.4th 370, 379 n.5 (D.C. Cir. 2025) ("Title II of the ADA is interpreted alongside Section 504 of the Rehabilitation Act, as if the two statutes were one law.").

An individual has a disability for purposes of the ADA and the Rehabilitation Act if she has "a physical or mental impairment that substantially limits one or more major life activities," has a "record of such an impairment," or is "regarded as having such an impairment." 42 U.S.C. § 12102(1); *see* 29 U.S.C. § 705(9)(B). Ms. Smith alleges that she was disabled based on her adenomyosis, polycystic ovary syndrome, and endometriosis, and that the District regarded her as disabled based on her "visible sickness" during the 2024-2025 school year, which "created the impression that she was suffering from serious disabilities." ECF No. 4 ¶ 83. The District does not dispute that Ms. Smith has a disability and that she was otherwise qualified for her position. *See generally* ECF Nos. 11, 14. The court will accordingly focus on whether Ms. Smith suffered any adverse employment action because of her disability.[4]

---

[4] The District does argue that Ms. Smith has not plausibly alleged that it was on notice of her disability or regarded her as disabled. *See* ECF No. 11, at 8-10. But at the pleading stage, Ms. Smith need only "'plausibly allege that [s]he was discriminated against on account of [her] disability,' with respect to the terms, conditions, or privileges of her employment, and must do so by alleging some facts that 'give rise to the reasonable inference that [her] disability was the reason for [the District's] actions.'" *McCann v. District of Columbia*, No. 23-CV-2398, 2025 WL 958130, at *5 (D.D.C. Mar. 31, 2025) (first and second alterations in original) (quoting *Brown v.*

(*continued on next page*)

Ms. Smith alleges that the District discriminated against her by: (1) taking away her LEAP facilitation duties for a month; (2) increasing her workload; (3) giving her a negative performance evaluation; (4) marking her as AWOL while she was on leave; (5) requiring her to work and contacting her to discuss work matters while she was on leave; and (6) issuing a reduction-in-force letter in May 2025. ECF No. 4 ¶¶ 88-93; *see* ECF No. 12, at 9. The District argues that only the AWOL designation and performance evaluation constitute adverse actions for purposes of her discrimination claim, ECF No. 14, at 5 n.2, and that Ms. Smith fails to allege causation for any of her alleged employment actions, *see id.* at 2-5; ECF No. 11, at 8-11. The court concludes that Ms. Smith has sufficiently alleged disability discrimination and will deny the District's motion to dismiss this claim.

**1. Adverse employment action**

In *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), the Supreme Court held that a plaintiff must simply allege "some harm" regarding the terms or conditions of her employment to support a discrimination claim. *Id.* at 350. That holding is largely consistent with the D.C. Circuit's decision in *Chambers v. District of Columbia*, 35 F.4th 870 (D.C. Cir. 2022) (en banc), in which the D.C. Circuit held that a plaintiff need only allege some change with respect to the terms and

---

*McDonough*, No. 22-CV-3209, 2024 WL 1344417, at *4 (D.D.C. Mar. 29, 2024)); *cf. Anderson v. CloudHQ LLC*, No. 24-CV-916, 2024 WL 2152464, at *3 (D.D.C. May 14, 2024) (explaining that a plaintiff "must show that her employer knew of her disability" to bring a failure-to-accommodate claim), *aff'd*, No. 24-7080, 2025 WL 817426 (D.C. Cir. Mar. 14, 2025). As the District clarifies in its reply brief, the District's knowledge—or lack thereof—regarding Ms. Smith's disabled status is relevant to causation—that is, whether the District took the alleged adverse actions because of her disability. *See* ECF No. 14, at 2 ("[W]hat Defendants argue is that for the necessary 'causal link to be shown' for a disparate treatment claim[,] the 'employer must have acted with an awareness of the disability itself.'" (quoting *Crandall v. Paralyzed Veterans of Am.*, 146 F.3d 894, 896-97 (D.C. Cir. 1998))). The court accordingly considers notice as part of the District's causation argument.

conditions of her employment (as opposed to an "objectively tangible harm") to plead an adverse action. *Id.* at 874-75. While *Muldrow* and *Chambers* concerned Title VII, *see* 601 U.S. at 350; 35 F.4th at 872, courts have applied *Muldrow* to ADA and Rehabilitation Act claims because "the relevant statutory language is 'virtually identical,'" *Alao v. District of Columbia*, No. 24-CV-784, 2025 WL 885202, at *6 (D.D.C. Mar. 21, 2025) (quoting *Rios v. Centerra Grp. LLC*, 106 F.4th 101, 112 n.4 (1st Cir. 2024)); *see Tuck v. District of Columbia*, No. 24-CV-2609, 2025 WL 2159182, at *2 (D.D.C. July 30, 2025) (applying the *Muldrow* standard to an ADA discrimination claim); *Ahuruonye v. U.S. Dep't of Interior*, No. 17-CV-2061, 2026 WL 983087, at *7 (D.D.C. Apr. 13, 2026) (same for a Rehabilitation Act discrimination claim). As noted, the District does not dispute that Ms. Smith's AWOL designations and negative performance evaluation are adverse actions, ECF No. 14, at 5 n.5, and the court concludes that Ms. Smith has plausibly alleged that the other actions—the loss of her LEAP facilitation duties, her increased workload, Ms. Gray's harassing conduct while Ms. Smith was on leave, and the reduction-in-force letter—constitute adverse employment actions.

*LEAP duties.* The District argues that Ms. Smith's loss of LEAP duties was not an adverse action because the removal was "unaccompanied by a decrease in salary or work-hour changes" and her duties were restored the following month. ECF No. 14, at 5. The court disagrees. As an initial matter, the District relies largely on cases that were decided before *Muldrow*—and some even before *Chambers*—in support of its position. *See* ECF No. 11, at 11; ECF No. 14, at 5-6. But even before *Muldrow* and *Chambers*, courts recognized that "stripping [an employee] . . . of the duties normally associated with [her] post" is sufficient to constitute an adverse employment action. *Yazzie v. Nat'l Org. for Women*, 712 F. Supp. 3d 56, 79 (D.D.C. 2024); *see Obse v. Collins*, No. 25-CV-1670, 2026 WL 2210018, at *8 (D.D.C. July 31, 2026) (concluding that a nurse's

reassignment to a "non-primary care clinic where he could perform vaccin[ations] only" was an adverse action (alteration in original) (internal quotation marks omitted)). And even though the loss of her LEAP facilitation duties was temporary, Ms. Smith has nevertheless alleged that she experienced "some 'disadvantageous' change in" the terms or conditions of her employment, *Muldrow*, 601 U.S. at 354 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)), by losing "one of her essential job functions" for a month, ECF No. 4 ¶ 37; *see id.* ¶ 40. Ms. Smith need not show that "the harm incurred was significant . . . [o]r serious, or substantial, or any similar adjective." *Muldrow*, 601 U.S. at 355 (internal quotation marks omitted).

*Increased workload.* Ms. Smith alleges that Ms. Gray "overloaded [her] with work so that she could not reasonably accomplish all [her] tasks" and "required her to stay on morning duty[] and complete duties of Ms. Barnes." ECF No. 4 ¶ 89; *see id.* ¶¶ 43-52. These allegations are also sufficient to survive at the motion-to-dismiss stage. When an employee's increased workload "negatively impact[s] her work environment," the employee suffers "some harm" to an employment term or condition. *Mitchell v. Garland*, No. 23-CV-2412, 2024 WL 3251217, at *4 (D.D.C. July 1, 2024) (quoting *Muldrow*, 601 U.S. at 355). Ms. Smith alleges that the increase in "assigned work tasks and scheduled duties" far exceeded "what she could reasonably accomplish" and exacerbated her disabilities. ECF No. 4 ¶ 43. Additionally, being on morning arrival duty took Ms. Smith away from lesson-planning and "negatively impacted her performance in that her lesson plans could not be as complete." *Id.* ¶ 45; *see Stewart v. U.S. Dep't. of Agric.*, No. 23-CV-1194, 2024 WL 4332618, at *6 (D.D.C. Sep. 27, 2024) (finding that an increased workload was an adverse action where the plaintiff "was forced to take additional steps to complete tasks and take on her coworkers' tasks"); *Regis v. Noem*, No. 24-CV-2405, 2025 WL 1580808, at *4 (D.D.C. June 4, 2025) (holding that the plaintiff plausibly alleged adverse employment

actions based on his exclusion from training opportunities and placement on a performance improvement plan that required weekly check-ins).

*Ms. Gray's communications while Ms. Smith was on leave.* Ms. Smith alleges that Ms. Gray contacted her to discuss work matters and harassed her while she was on medical leave. ECF No. 4 ¶¶ 35-36, 38, 92. On one occasion, Ms. Smith alleges that Ms. Gray "kept [her] on the phone for an extended period of time, questioning her about her work, yelling at her, abusing her, and preventing her from attending to her medical needs." *Id.* ¶ 35. The following day, Ms. Gray again called to "interrogate [Ms. Smith] about work matters, once again displaying aggression and aggravation." *Id.* ¶ 36. Generally, hostile workplace interactions and "one-off requests" sent to employees while they are on leave do not rise to the level of adverse employment actions. *Rhone v. Rubio*, No. 24-CV-3389, 2025 WL 3017791, at *7 (D.D.C. Oct. 28, 2025) (concluding that emails to an employee on leave "with instructions to dismiss or close out cases . . . did not necessarily entail a negative impact to [the plaintiff's] work environment"); *see id.* at *8 (concluding that being "chastise[d]" and "berate[d]" by supervisors was not an adverse employment action (alterations in original) (internal quotation marks omitted)). But Ms. Smith also alleges that a few months later, she feared a similar reaction from Ms. Gray and continued to work despite being "seriously ill" in connection with her disabilities. ECF No. 4 ¶¶ 41-42. Ms. Smith attempted to lead a LEAP seminar but "became violently ill to the point of vomiting in front of the seminar attendees and fell unconscious shortly thereafter." *Id.* ¶ 42. Ms. Smith thus plausibly alleges that Ms. Gray's actions changed the conditions of her employment such that she felt compelled to work while she was sick and collapsed in front of colleagues as a result. While the District may later dispute the causal link between Ms. Gray's actions and Ms. Smith's choice not to take leave, that dispute would concern causation rather than the adverse action requirement.

*Reduction-in-force letter.* Finally, Ms. Smith alleges that the District's issuance of a reduction-in-force letter is an adverse employment action. ECF No. 4 ¶ 93. The District appears to dispute whether this constitutes an adverse action for purposes of a discrimination claim, *see* ECF No. 14, at 5 n.5, but it does not address the letter specifically, *see generally id.* at 5-6; ECF No. 11, at 11. Some courts have held that a "proposed suspension that is never served and is later rescinded does not constitute an adverse action." *Tyson v. Brennan*, 277 F. Supp. 3d 28, 36 (D.D.C. 2017); *see Russell v. Principi*, 257 F.3d 815, 819-20 (D.C. Cir. 2001) (holding at summary judgment that an "unrealized risk of a future adverse action" was "too ephemeral to constitute an adverse employment action"); *Larson v. Noem*, No. 24-CV-808, 2025 WL 2709774, at *8 & n.8 (D.D.C. Sep. 23, 2025) (collecting cases and arguing that the D.C. Circuit's holding in *Russell* survived *Muldrow*). Here, the District rescinded Ms. Smith's separation about a month after issuing the letter. *See* ECF No. 4 ¶¶ 73, 76. While the rescinded letter on its own may not constitute an adverse action, the court need not resolve this issue at this stage because the District does not argue that the reduction-in-force letter falls short of being an adverse employment action for purposes of a discrimination claim. *See* ECF No. 11, at 11; ECF No. 14, at 5-6.[5]

In sum, drawing all inferences in her favor, as the court must, *see Iqbal*, 556 U.S. at 678, the court concludes that Ms. Smith has plausibly alleged adverse actions to survive a motion to dismiss based on the loss of her LEAP facilitation duties, her increased workload, her negative

---

[5] In contrast, the District contends that the reduction-in-force letter is not materially adverse for purposes of Ms. Smith's retaliation claims. *See infra* Section IV.C.3. The District also contends that "increased scrutiny is not an adverse action for purpose[s] of a discrimination claim" and that Ms. Smith has conceded that point by failing to respond to it. ECF No. 14, at 5; *see* ECF No. 11, at 11. But Ms. Smith does not expressly refer to "increased scrutiny" by Ms. Gray as an adverse employment action. *See* ECF No. 4 ¶¶ 88-93; ECF No. 12, at 9.

performance evaluation, her AWOL designations, Ms. Gray's harassing conduct while Ms. Smith was on leave, and the reduction-in-force letter.

**2. Causation**

To show that an adverse action was "because of [her] disability," *Giles*, 794 F.3d at 5 (quoting *Duncan v. Wash. Metro. Area Transit Auth.*, 240 F.3d 1110, 1114 (D.C. Cir. 2001)), Ms. Smith must allege a causal connection between the adverse action and her disabled status, *see Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008). One way that a plaintiff can satisfy this burden is "by showing 'that she was treated differently from similarly situated employees who are not part of the protected class.'" *Brown v. Sessoms*, 774 F.3d 1016, 1022 (D.C. Cir. 2014) (quoting *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005)). While "there is a very low bar for alleging an inference of discrimination" at the motion-to-dismiss stage, *Sims v. Sunovion Pharms., Inc.*, No. 17-CV-2519, 2019 WL 690343, at *8 (D.D.C. Feb. 19, 2019), a plaintiff bears the burden of alleging "some facts" to give rise to the reasonable inference that her disability "was the reason for [the] defendant's actions," *Keith v. U.S. Gov't Accountability Off.*, No. 21-CV-2010, 2022 WL 3715776, at *3 (D.D.C. Aug. 29, 2022) (quoting *Doe #1 v. Am. Fed'n of Gov't Emps.*, 554 F. Supp. 3d 75, 102 (D.D.C. 2021)). Additionally, "when an employment discrimination complaint contains fulsome factual context for the challenged adverse employment action, those allegations must be considered collectively in evaluating the reasonableness and plausibility of the inferences urged by the plaintiff." *Townsend v. United States*, 236 F. Supp. 3d 280, 298 (D.D.C. 2017).

Ms. Smith asserts that she has identified a similarly situated comparator, Ms. Barnes, who was not subjected to the same adverse employment actions that she suffered. ECF No. 12, at 10. Ms. Barnes was the Math Instructional Coach at LaSalle and "is able-bodied." ECF No. 4 ¶ 47.

According to Ms. Smith, Ms. Barnes was not given unreasonable levels of additional work and duties, was not required to submit her work to Ms. Gray or Ms. Smith for review, and was not "consistently" required to serve on morning arrival duty. *Id.* ¶¶ 47, 49, 51. The District counters that Ms. Smith fails to show that Ms. Barnes was similarly situated and that Ms. Smith provides only Ms. Barnes's job title, "which is different from that of [Ms. Smith]." ECF No. 14, at 4. But, drawing all inferences in her favor, the court concludes that Ms. Smith has plausibly alleged that Ms. Barnes held the same position as her—as an Instructional Coach for a different subject, *see* ECF No. 4 ¶ 47—and reported to the same supervisor, Ms. Gray, *see id.* ¶ 31 (alleging that Ms. Gray did not require Ms. Barnes to attend weekly meetings with her); *see also id.* ¶ 51 (alleging that Ms. Barnes was not required to submit work to Ms. Smith, the Reading Coach, but Ms. Smith was required to submit work to Ms. Barnes, the Math Coach). Indeed, Ms. Smith suggests that Ms. Barnes had similar LEAP facilitation duties as an Instructional Coach. *See id.* ¶ 31 (alleging that only Ms. Smith was required to submit her weekly LEAP agendas to Ms. Gray for review). These allegations are sufficient at the pleading stage to show that Ms. Barnes was a similarly situated employee. *See, e.g.*, *Stewart*, 2024 WL 4332618, at *6 (finding allegations of comparators who were "at a similar salary grade to [the plaintiff] and [who] were also supervised by [the plaintiff's] supervisors" sufficient at the motion-to-dismiss stage); *McCann v. District of Columbia*, No. 23-CV-2398, 2025 WL 958130, at *6 (D.D.C. Mar. 31, 2025) (finding an inference of discrimination where the plaintiff alleged that other employees were allowed to telework and take leave without the restrictions that the employer placed on the plaintiff); *see also Joyner v. Morriston & Foerster LLP*, 140 F.4th 523, 530 (D.C. Cir. 2025) (holding that there is no "mechanical formula" for determining whether "a plaintiff proceeding on only a comparator theory [has] plead[ed] enough facts about those comparators" to raise an inference of discrimination).

To be sure, Ms. Smith does not expressly allege whether Ms. Barnes was treated differently with respect to each alleged adverse action, such as the reduction-in-force letter. *See* ECF No. 4 ¶ 73 (alleging that the letter stated that Ms. Smith's "position as Instructional Coach was being 'excessed,' or eliminated" without any mention of Ms. Barnes's position). But Ms. Smith plausibly alleges that Ms. Barnes received more favorable treatment in various other respects, *see, e.g.*, *id.* ¶¶ 23, 31, 47-49, 51, which is sufficient to survive a motion to dismiss, *cf. Niles v. U.S. Capitol Police*, No. 16-CV-1209, 2019 WL 1858503, at *7 (D.D.C. Apr. 25, 2019) (noting that a plaintiff need not "show that her comparators engaged in similar conduct" in "advance of discovery" and instead "should be allowed an opportunity to develop her factual assertions through discovery"). The District does not appear to dispute this point, instead contending that Ms. Smith's "allegations that [Ms. Smith] was treated differently [than Ms. Barnes] pertain to a limited set of allegations concerning additional job responsibilities that do not rise to the level of adverse actions." ECF No. 14, at 4. But this argument is non-responsive as it concerns causation, and the court has already rejected the District's arguments regarding adverse action, *see supra* Section IV.B.1.

In addition to pointing to Ms. Barnes as a comparator, Ms. Smith alleges comments and actions by Ms. Gray that, in Ms. Smith's view, further support an inference of discrimination. ECF No. 12, at 10-11. For example, Ms. Gray allegedly made comments that did not expressly refer to Ms. Smith's disability but suggested that Ms. Smith was not working enough. *See* ECF No. 4 ¶¶ 26, 30 (alleging comments such as "[l]eadership goes beyond bell to bell," "[p]eople have to put the work in," and "[p]eople cannot get by doing the bare minimum" (internal quotation marks omitted)). Ms. Gray also told Ms. Smith "many times [that] this is not the place for you." *Id.* ¶ 56. And Ms. Gray repeatedly called and emailed Ms. Smith while she was on sick leave, exhibiting

"extreme aggression and condescension." *Id.* ¶¶ 34-36, 38, 60. While Ms. Gray's comments do not expressly refer to Ms. Smith's disability, they constitute "probative evidence of [Ms. Gray's] discriminatory attitude." *Morris v. McCarthy*, 825 F.3d 658, 670 (D.C. Cir. 2016); *see Williams v. Red Coats, Inc.*, No. 20-CV-571, 2021 WL 4476770, at *12-13 (D.D.C. Sep. 30, 2021) (concluding at summary judgment that a jury could find comments to the plaintiff that "she was taking too much time off work" to reflect a discriminatory motive for purposes of a D.C. Human Rights Act disability discrimination claim (internal quotation marks omitted)). Ms. Gray allegedly berated Ms. Smith while she was on leave, thereby "preventing her from attending to her medical needs," ECF No. 4 ¶ 35, and Ms. Gray removed her LEAP duties the following day, *id.* ¶ 37. And Ms. Smith further alleges that Ms. Gray's actions caused her to fear taking sick leave for her disability-related illness, which resulted in her becoming violently ill at work and falling unconscious. *See id.* ¶¶ 41-42; *cf. Epps v. Potomac Elec. Power Co.*, 389 F. Supp. 3d 53, 66-67 (D.D.C. 2019) (concluding that the plaintiff stated an ADA discrimination claim where she alleged that she had attempted to return to work after being placed on long-term disability leave but her employer failed to reinstate and ultimately terminated her). While each act on its own may not give rise to a plausible inference of discrimination, Ms. Smith's "allegations must be considered collectively in evaluating the reasonableness and plausibility of the inferences." *Townsend*, 236 F. Supp. 3d at 298. When considered collectively, Ms. Smith's allegations are sufficient to plausibly allege a causal connection between her disability and the adverse actions.

Finally, the court addresses the District's argument that Ms. Smith fails to allege that the District had notice of her disability or regarded her as disabled. ECF No. 11, at 8-10; ECF No. 14, at 2-3. The District relies principally on *Crandall v. Paralyzed Veterans of Am.*, 146 F.3d 894, (D.C. Cir. 1998), in which the D.C. Circuit held at summary judgment that a plaintiff alleging

disability discrimination must show that her employer had notice of her disability. *Id.* at 896-98; *see* ECF No. 14, at 2-3. While the District is "correct that the defendant 'must have acted with an awareness of the disability itself,' . . . the [c]ourt finds that [Ms. Smith] has pleaded sufficient facts to show that [Ms. Gray] more likely than not had knowledge of her . . . disability." *Bernahu v. Blinken*, No. 21-CV-459, 2022 WL 17338079, at *10 (D.D.C. Nov. 30, 2022) (quoting *Crandall*, 146 F.3d at 897). Specifically, Ms. Smith alleges that her disabilities manifested in serious illness and pain that required her to take medical leave and once caused her to become violently ill at work and collapse. ECF No. 4 ¶¶ 18, 41-42. And Ms. Gray's negative comments about Ms. Smith's taking leave and not working hard enough, *see, e.g.*, *id.* ¶¶ 26, 30, 35, strengthen the inference that Ms. Gray knew that Ms. Smith had a condition that impaired her. Particularly in light of Ms. Smith's allegations regarding a similarly situated comparator, the court concludes that Ms. Smith has "nudged" her claims of discrimination "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570). The court thus concludes that Ms. Smith has met her burden of alleging "some facts" giving rise to the reasonable inference that her disability "was the reason for [the District's adverse] actions." *Keith*, 2022 WL 3715776, at *3 (quoting *Doe #1*, 554 F. Supp. 3d at 102); *see Rhone*, 2025 WL 3017791, at *7 ("Of course, as this case progresses through further pleadings or discovery, Plaintiff will need to 'flesh out the exact significance of the [adverse action] and its relationship to [her] job responsibilities,' as well as the causation element, in order to advance her claim." (second alteration in original) (quoting *Liu v. Georgetown Univ.*, No. 22-CV-157, 2022 WL 2452611, at *6 (D.D.C. July 6, 2022))). Accordingly, the court denies the District's motion to dismiss Ms. Smith's disability discrimination claim (Count I).

### C. Retaliation (Count III)

To bring a retaliation claim under the ADA, the Rehabilitation Act, or the DCFMLA, a plaintiff must demonstrate that (1) "she engaged in a protected activity, (2) "the defendant took a materially adverse action against her," and (3) "there was a causal connection between the protected activity and the adverse action." *Shinabargar v. Bd. of Trs. of Univ. of D.C.*, 164 F. Supp. 3d 1, 16 (D.D.C. 2016) (quoting *Kimmel v. Gallaudet Univ.*, 639 F. Supp. 2d 34, 43 (D.D.C. 2009)); *see Curwen v. D.C. Int'l Sch.*, No. 24-CV-2948, 2025 WL 1938166, at *7 (D.D.C. July 15, 2025) (applying the same standard to a DCFMLA retaliation claim).[6]

The parties dispute only whether Ms. Smith has plausibly alleged materially adverse actions. As a threshold matter, Ms. Smith contends that the "materially adverse" requirement for retaliation claims is a lower bar than what is required to establish an adverse employment action for purposes of a discrimination claim. ECF No. 12, at 15-16, 18. As Defendants point out, *see* ECF No. 14, at 8-11, Ms. Smith has it backward. While *Muldrow* lowered the adverse action standard for discrimination claims, the Supreme Court clarified that the threshold did not change for retaliation claims and the "materially adverse" standard thus remains. 601 U.S. at 357-58.

With that proper framing in mind, the court turns to Ms. Smith's allegations that Defendants retaliated against her by "marking her AWOL [twice] while she was on approved leave, reducing her overtime, and issuing her a reduction in force [letter] to terminate her," ECF

---

[6] Ms. Smith also purports to bring her retaliation claim under Title VII, *see* ECF No. 4 ¶¶ 113-114, 119, but disability is not a protected class under Title VII, *see* 42 U.S.C. § 2000e-16(a) (prohibiting discrimination "based on race, color, religion, sex, or national origin"); *see also McGrath v. Clinton*, 666 F.3d 1377, 1382 (D.C. Cir. 2012) (explaining that "discrimination based on disability . . . is not an act made unlawful . . . by Title VII . . . [or] subject to its anti-retaliation provision" (internal quotations omitted)). The court accordingly dismisses Count III to the extent it is based on Title VII.

No. 4 ¶ 117, and by changing her work assignment when she returned from leave, *id.* ¶ 75. Defendants argue that none of these alleged actions are materially adverse. ECF No. 11, at 12-15; ECF No. 14, at 8-11. The court concludes that Ms. Smith has failed to plausibly allege that Defendants retaliated against her by marking her as AWOL in February 2025, by issuing a reduction-in-force letter, or by changing her work responsibilities. But the court will allow Ms. Smith to proceed on her retaliation claim based on the June 2025 AWOL designation and the reduction in her overtime.

**1. AWOL designations**

First, Defendants argue that Ms. Smith fails to allege adverse employment action for purposes of a retaliation claim based on her two AWOL designations. ECF No. 11, at 12-13; ECF No. 14, at 9. Some courts have found that AWOL designations can constitute materially adverse employment actions because even "the temporary deprivation of wages counts as a materially adverse action." *Taylor v. Solis*, 571 F.3d 1313, 1321 (D.C. Cir. 2009); *see*, *e.g.*, *Ajisafe v. Gov't of D.C.*, No. 25-CV-81, 2026 WL 710212, at *14 (D.D.C. Mar. 13, 2026) (holding that a five-day AWOL charge was an adverse employment action for purposes of an federal FMLA retaliation claim); *Mitchell v. Garland*, No. 20-CV-3083, 2022 WL 703906, at *6 (D.D.C. Mar. 9, 2022) (concluding that a plaintiff's one-day placement on AWOL status was a materially adverse action supporting a Title VII retaliation claim). Here, Ms. Smith alleges that Ms. Gray first designated her as AWOL on February 20, 2025, "while [Ms. Smith] was still on [DCFMLA] leave." ECF No. 4 ¶ 63; *see id.* ¶ 60-61. But FMLA and DCFMLA leave is generally unpaid, *see* 29 U.S.C. § 2612; D.C. Code § 32-503; *see also Gordon v. U.S. Capitol Police*, 778 F.3d 158, 160 (D.C. Cir. 2015), and Ms. Smith fails to allege how her AWOL designation while on unpaid leave deprived her of wages or otherwise affected her employment, *cf. Mitchell*, 2022 WL 703906, at *6 (noting

that a one-day placement on AWOL status "took money out of [the plaintiff's] paycheck"). Ms. Smith's first AWOL designation thus falls short of being a materially adverse action.

As for Ms. Smith's second AWOL designation, Ms. Smith alleges that in June 2025, she "requested sick leave the day after she was exposed to [mold and rat feces in her office] and while those [areas] were being cleaned," but Ms. Gray "did not respond to her request and instead marked [her] as AWOL." ECF No. 4 ¶ 70; *see id.* ¶ 69; ECF No. 12, at 20 (stating that she was marked AWOL on June 11, 2025). Accepting Ms. Smith's allegations as true, she was not granted sick leave and was instead placed on AWOL status. The court can thus reasonably infer that Ms. Smith suffered a "temporary deprivation of wages," *Taylor*, 571 F.3d at 1321, which is sufficient to support a retaliation claim, *see Mitchell*, 2022 WL 703906, at *6. Accordingly, the court concludes that Ms. Smith has sufficiently alleged a materially adverse action based on her second AWOL designation to survive a motion to dismiss.[7]

**2. Reduction in overtime**

With respect to the reduction in Ms. Smith's overtime hours, Defendants contend that Ms. Smith fails to allege that "any loss in overtime pay was anything more than *de minimis*." ECF No. 11, at 13-14. The court disagrees. A reduction in overtime from two hours to one hour per day may appear to be a minor change, but Ms. Smith alleges that, before the reduction, she consistently worked two hours of overtime every day. *See* ECF No. 4 ¶¶ 48, 52. Cutting her overtime in half is thus sufficient to "dissuade[] a reasonable worker from making or supporting a

[7] Defendants also argue that Ms. Smith cannot bring a duplicative retaliation claim based on a failure to accommodate her disability—that is, the denial of her request for leave—*see* ECF No. 11, at 13, but Ms. Smith does not raise a failure-to-accommodate claim. There is accordingly no risk of "doubl[ing]" recovery here. *Floyd v. Lee*, 968 F. Supp. 2d 308, 334 (D.D.C. 2013).

charge of discrimination. *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).

Defendants also contend that Ms. Smith's "alleged timeline is unclear because she has failed to plead sufficient facts to establish when she went out on DCFMLA leave, when she returned, and when her [overtime] hours were reduced." ECF No. 11, at 13.[8] While Ms. Smith's timeline of events is not a model of clarity, Ms. Smith has sufficiently alleged facts regarding the timing of her overtime reduction. Specifically, she alleges that she took DCFMLA leave "starting in late February 2025," ECF No. 4 ¶ 60, and "[i]n or around this time period, when [she] returned from FMLA leave," Ms. Gray reduced her permitted overtime hours, *id.* ¶ 64.[9] While "this time period" is not entirely clear, *see id.*, Ms. Smith clarifies that she "return[ed] . . . from her FMLA leave" on June 10, 2025, *id.* ¶ 75; *see* ECF No. 12, at 20 (repeating this timeline). Ms. Smith has therefore sufficiently alleged facts to show that the reduction in her overtime hours upon her return from leave was a materially adverse action.

**3. Reduction-in-force letter**

Defendants argue that Ms. Smith's reduction-in-force letter is not a retaliatory adverse action. ECF No. 11, at 14; ECF No. 14, at 10. In May 2025, Ms. Smith received a letter advising her that her position was being eliminated and that she would be "subject to separation from the school system" unless she had received an "effective" or "highly effective" rating on her previous

---

[8] In making this argument, Defendants cite cases invoking the causation prong of retaliation, *see* ECF No. 11, at 13-14, but the court does not understand Defendants to be challenging Ms. Smith's causation arguments at this time. Indeed, Defendants' reply brief focuses solely on whether loss of overtime is a materially adverse action. *See* ECF No. 14, at 9.

[9] The court notes that, throughout her filings, Ms. Smith appears to use "DCFMLA leave" and "FMLA leave" interchangeably.

performance evaluation. ECF No. 4 ¶ 73 (internal quotation marks omitted). The following month, Defendants rescinded the letter and advised her that "she would be able to work at another school, which she did." *Id.* ¶ 76. Defendants contend that "[a] long line of cases from this Circuit and others have held that threats, revoked disciplinary plans, and other such ultimately unconsummated actions are not materially adverse for purposes of retaliation claims." ECF No. 11, at 14 (quoting *McNair v. District of Columbia*, 903 F. Supp. 2d 71, 75-76 (D.D.C. 2012)). Because Ms. Smith's separation was "quickly rescinded," Defendants argue that Ms. Smith cannot bring a retaliation claim based on the reduction-in-force letter. *Id.*

In response, Ms. Smith argues only that Defendants are improperly relying on cases "appl[ying] the higher standard for adverse employment actions" in discrimination claims. ECF No. 12, at 18-19. But as the court has already explained, *see supra* p. 22, while the Supreme Court in *Muldrow* lowered the standard for adverse action for *discrimination* claims, it maintained the "materially adverse" standard for *retaliation* claims, 601 U.S. at 357-58. Thus, the cases Defendants cite reflect the current state of the law for retaliation claims and explain why Ms. Smith's rescinded reduction-in-force letter is not a materially adverse action. Specifically, in *Baloch*, the D.C. Circuit held that proposed suspensions, which were "not actually served," were not materially adverse actions for purposes of a retaliation claim at the summary-judgment stage. 550 F.3d at 1199. Courts in this district have reached the same conclusion at the motion-to-dismiss stage. *See, e.g.*, *Ward-Johnson v. Glin*, No. 19-CV-534, 2020 WL 2770018, at *10 (D.D.C. May 28, 2020) (dismissing a retaliation claim where the plaintiff's employer allegedly informed her that her employment would end a year early, but ultimately the plaintiff "was never terminated"); *Larson*, 2025 WL 2709774, at *8 (dismissing a retaliation claim where the plaintiff "never served" a proposed indefinite suspension and did "not allege [that it] gave rise to other

harms"); *Blackmon-Malloy v. U.S. Capitol Police Bd.*, No. 01-CV-2221, 2024 WL 4298853, at *47 (D.D.C. Sep. 26, 2024) ("[A] penalty that is never served is insufficient to satisfy the material adversity requirement for a retaliation claim."); *Kangethe v. District of Columbia*, 206 F. Supp. 3d 661, 669 (D.D.C. 2016) ("Plaintiffs who do not actually serve proposed punishments do not suffer the sort of objective, material harm that is required to constitute an 'adverse action' in this Circuit."); *see also McNair*, 903 F. Supp. 2d at 76 (granting judgment on the pleadings because a supervisor's letter "threatening [the plaintiff] with termination proceedings" was not a materially adverse action).

Here, it is undisputed that Ms. Smith's separation letter was rescinded before it became effective, ECF No. 4 ¶ 76, and there is thus no reason to deviate from the litany of cases consistently holding that employment actions like proposed terminations and suspensions that do not ultimately come to fruition are not materially adverse actions. *See Kangethe*, 206 F. Supp. at 669. To be sure, Ms. Smith alleges that the letter caused her "severe emotional distress" and caused her to search for new employment during the month it was in effect, ECF No. 4 ¶ 74, but that is insufficient to establish material adverse action for purposes of a retaliation claim. *See Baloch*, 550 F.3d at 1199. The court accordingly dismisses Ms. Smith's retaliation claim based on the reduction-in-force letter.

#### 4. Change in work responsibilities

Finally, Defendants argue that the June 2025 change to Ms. Smith's work responsibilities does not constitute an materially adverse action. ECF No. 11, at 14-15. The court agrees. Ms. Smith alleges that upon her return from leave, "Ms. Gray altered the responsibilities of her role from supporting kindergarten through fifth grade teachers to supporting a pre-school self-contained special education teacher." ECF No. 4 ¶ 75. But Ms. Smith's complaint is devoid

of any allegations explaining how this change to her role adversely affected her. Ms. Smith argues in her opposition that Ms. Gray "reassigned [her] in a manner that significantly altered her duties," but a significant change in duties, on its own, does not constitute a materially adverse employment action. ECF No. 12, at 19. "Retaliatory work assignments are a 'classic' and '"widely recognized"' example of 'forbidden retaliation,'" *Bain v. Off. of Att'y Gen.*, 648 F. Supp. 3d 19, 56 (D.D.C. 2022) (quoting *Burlington*, 548 U.S. at 71), but a plaintiff must nevertheless allege that the change is less desirable or adverse in some respect, *see Burlington*, 548 U.S. at 70-71 ("Common sense suggests that one good way to discourage an employee . . . from bringing discrimination charges would be to insist that she spend more time performing the more arduous duties and less time performing those that are easier or more agreeable."). Without more facts suggesting that Ms. Smith's reassignment was unfavorable, let alone how it would dissuade a reasonable worker from making or supporting a charge of discrimination, the reassignment is not materially adverse for purposes of retaliation.

In sum, the court concludes that Ms. Smith has sufficiently alleged that her June 2025 AWOL designation and her reduction in overtime are materially adverse employment actions. And because Defendants do not contest that Ms. Smith engaged in protected activity or that she has alleged a causal connection between these adverse actions and her disability, Ms. Smith may proceed on her retaliation claims based on those alleged adverse actions.

### D. Hostile Work Environment Based on Disability (Count II) and Retaliatory Hostile Work Environment (Count IV)

To state a hostile work environment claim under the ADA or the Rehabilitation Act, a plaintiff must show that she "was subjected to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and

create an abusive working environment.'" *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 577 (D.C. Cir. 2013) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *see Hill v. Assocs. for Renewal in Educ., Inc.*, 897 F.3d 232, 237 (D.C. Cir. 2018) (assuming without deciding that a hostile work environment claim is cognizable under the ADA); *Kuraner v. Mineta*, No. 00-5416, 2001 WL 936369, at *1 (D.C. Cir. July 10, 2001) (per curiam) ("Our decision assumes, without deciding, that the Rehabilitation Act creates a cause of action for hostile work environment."); *Congress v. District of Columbia*, 324 F. Supp. 3d 164, 169-70 (D.D.C. 2018) (noting that courts in this district "ordinarily assume" that the ADA and the Rehabilitation Act permit hostile work environment claims). A plaintiff may also bring "a special type of retaliation claim based on a hostile work environment by alleging a series of individual acts that may not be actionable on [their] own but become actionable due to their cumulative effect." *Menoken v. Dhillon*, 975 F.3d 1, 5-6 (D.C. Cir. 2020) (alteration in original) (internal quotation marks omitted) (quoting *Baird v. Gotbaum*, 792 F.3d 166, 168 (D.C. Cir. 2015)). The constituent acts "must be both 'adequately linked such that they form a coherent hostile environment claim,' and 'of such severity or pervasiveness as to alter the conditions of . . . employment and create an abusive working environment.'" *Id.* (alteration in original) (quoting *Baird*, 792 F.3d at 168-69). "In evaluating a hostile work environment claim, the court 'looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance.'" *Ayissi-Etoh*, 712 F.3d at 577 (quoting *Baloch*, 550 F.3d at 1201). "The 'conduct must be extreme to amount to a change in the terms and conditions of employment.'" *Hill*, 897 F.3d at 237 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

Ms. Smith alleges hostile work environment based on her disability (Count II) and retaliatory hostile work environment (Count IV), both under the ADA and the Rehabilitation Act. ECF No. 4 ¶¶ 100-111, 127-140.[10] Her first claim is premised on the District's actions at issue in her discrimination claim (Count I), including, among other things: Ms. Gray's "repeatedly infringing on her medical leave to the point where she was afraid to take leave" and became ill in public; making comments about her poor performance; providing insufficient lesson-planning time; and reducing her overtime. *Id.* ¶ 104; *see supra* Section IV.B.1. Her second hostile work environment claim is based on the District's harassment and AWOL designations while she was on medical leave; reduction in her overtime; and issuance of the reduction-in-force letter. ECF No. 4 ¶ 132. The District argues that both claims fail because Ms. Smith has not alleged either "a continuous course of severe or pervasive harassment" or "a causal link between the alleged harassment and her protected status." ECF No. 11, at 16. The court agrees that Ms. Smith fails to plead "the kind of 'extreme' conditions that [the D.C. Circuit] and the Supreme Court have found to constitute a hostile work environment," *Hill*, 897 F.3d at 237 (quoting *Faragher*, 524 U.S. at 788), and it accordingly dismisses both claims.

While no doubt frustrating to Ms. Smith, her allegations "involve nothing more than the type of 'ordinary . . . vicissitudes of the workplace' that do not amount to actionable harassment." *Fields v. Vilsack*, 207 F. Supp. 3d 80, 93 (D.D.C. 2016) (alteration in original) (quoting *Alvarado v. Donahoe*, 687 F.3d 453, 461 (1st Cir. 2012)). Courts have consistently dismissed hostile work environment claims based on negative performance evaluations, AWOL designations,

[10] Ms. Smith also brings Count IV under Title VII and the DCFMLA. ECF No. 4 ¶ 128. As previously explained, *see supra* n.6, Title VII does not extend to claims on the basis of disability, and hostile work environment claims are not cognizable under the DCFMLA, *see Jackson v. District of Columbia*, No. 25-CV-1800, 2026 WL 850730, at *6 n.5 (D.D.C. Mar. 27, 2026).

supervisors' interference with a plaintiff's work and medical leave, and other examples of "discontent over general personnel disputes." *Morales v. Gotbaum*, No. 10-CV-221, 2012 WL 13036867, at *10 (D.D.C. Apr. 17, 2012); *see, e.g.*, *Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 94 (D.D.C. 2009) (dismissing a Title VII hostile work environment claim where the employer had "interfere[d] with [the plaintiff's] work," failed to promote the plaintiff multiple times, denied leave requests, and held "discussions to end [the plaintiff's] eligibility for workers' compensation and to terminate his employment"); *Jones v. D.C. Off. of Unified Commc'ns*, No. 25-CV-1129, 2025 WL 2977585, at *6 (D.D.C. Oct. 22, 2025) (finding that a supervisor's "alleged criticism of [the plaintiff's] use of FMLA leave . . . resembles the sort of 'offensive utterance' and 'sporadic use of abusive language' that the Supreme Court has deemed insufficiently severe to make out a hostile work environment claim" under the ADA (quoting *Faragher*, 524 U.S. at 788)); *Badibanga v. Howard Univ. Hosp.*, 679 F. Supp. 2d 99, 104 (D.D.C. 2010) (dismissing a Title VII hostile work environment claim where the plaintiff was placed on leave because of a false accusation, colleagues criticized his accent, he was told that he could easily be replaced with an American, and his supervisor told him that they would not hire "other Africans").

To be sure, Ms. Smith alleges that she feared taking medical leave because of Ms. Gray's "repeated and continuous harassment" to the point that she "had a public incident where she vomited in front of numerous people." ECF No. 4 ¶ 104. But Ms. Smith's allegations that Ms. Gray "interrogate[d] her about work matters," *id.* ¶ 36, "yell[ed] at her, abus[ed] her, and prevent[ed] her from attending to her medical needs," *id.* ¶ 35, do not rise to the level of "discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive as to create a hostile work environment," *Ayissi-Etoh*, 712 F.3d at 577 (quoting *Harris*, 510 U.S. at 21); *see Brooks v. Grundmann*, 748 F.3d 1273, 1277-78 (D.C. Cir. 2014) (holding that "petty insults,

vindictive behavior, and angry recriminations" do not give rise to a hostile work environment claim (quoting *Bhatti v. Trs. of Bos. Univ.*, 659 F.3d 64, 74 (1st Cir. 2011))); *Squires v. Gallaudet Univ.*, No. 20-CV-1348, 2021 WL 4399554, at *7 (D.D.C. Sep. 27, 2021) (explaining that "a hostile work environment is not actionable unless it is permeated by *discriminatory* animus; a showing of generalized hostility is not enough"). And Ms. Smith's assertion that the District did "not properly respond[]" to her concerns about Ms. Gray's harassment and interference with her medical leave, ECF No. 4 ¶ 104, alleges indifference, not "conduct [so] . . . extreme to amount to a change in the terms and conditions of her employment," *Hill*, 897 F.3d at 237 (quoting *Faragher*, 524 U.S. at 788); *see Morales*, 2012 WL 13036867, at *9-10 (dismissing a Title VII hostile work environment claim where the plaintiff alleged that supervisors had "constantly subjected [him] to negative commentary and belittling"; approached him "belligerent[ly]" with his "face and hands . . . tightly clenched, giving the impression that [the supervisor] was prepared to physically attack [the plaintiff]"; and falsely accused the plaintiff of "lying about his physical symptoms" (internal quotation marks omitted)). The court accordingly dismisses Ms. Smith's hostile work environment claims in their entirety.

## V. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendants' Motion to Dismiss, ECF No. 11, is **GRANTED** in part and **DENIED** in part. Ms. Smith may proceed on Counts I and V in their entirety. Counts II and IV are dismissed in their entirety. Count III is dismissed as it concerns the Title VII claim against both Defendants, the ADA and Rehabilitation Act claims against Ms. Gray, and the claims against both Defendants based on the February 2025 AWOL designation, the reduction-in-force letter, and the change in work responsibilities, but Ms. Smith may proceed on Count III against Ms. Gray under the DCFMLA and against the District of

Columbia under the ADA, the Rehabilitation Act, and the DCFMLA as it concerns the June 2025 AWOL designation and the reduction in overtime. It is further **ORDERED** that Defendants shall respond to the remaining counts in the complaint on or before October 14, 2026. *See* Fed. R. Civ. P. 12(a)(4)(A).

**SO ORDERED.**

LOREN L. ALIKHAN
United States District Judge

Date: September 30, 2026